UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| JANET SHELLMAN SHERMAN,<br><br>      Plaintiff,<br> v.<br><br>DETECTIVE RAYMOND HARVEY et al.,<br><br>      Defendants. | CASE NO. 2:24-cv-00408-TL<br><br>ORDER ON MOTION FOR SUMMARY JUDGMENT |

This matter is before the Court on Defendants' Motion for Summary Judgment. Dkt. No. 91. Plaintiff did not respond to Defendants' motion.[1] Instead, Plaintiff submitted a number of filings to the docket in what appears to be a multipart attempt to amend her complaint. These have been variously captioned as a "[Fourth Amended] Complaint" (Dkt. No. 90), "Motion to

---

[1] Defendants argue in their reply that Plaintiff's nonresponse to their motion should be considered an admission that their motion has merit under Local Civil Rule 7(b)(2). Dkt. No. 91 at 1. This provision, however, does not apply when a party fails to oppose a motion for summary judgment. *See* LCR 7(b)(2); *see also Brydges v. Lewis*, 18 F.3d 651, 652 (9th Cir. 1994) ("A district court may not grant a motion for summary judgment simply because the nonmoving party does not file opposing material . . . .").

ORDER ON MOTION FOR SUMMARY JUDGMENT – 1

Delay Praecipe of Summons" (Dkt. No. 94), "Motion for Leave from Court to Amend Complaint" (Dkt. No. 99), "Re-Motion for Leave from Court to Amend Complaint" (Dkt. No. 100), "Second Motion for Leave from Court to Amend Complaint" (Dkt. No. 102), and a duplicate "Second Motion for Leave to from Court to Amend Complaint" (Dkt. No. 103). The Court struck the first and denied the second as moot. *See* Dkt. No. 95. The Court will consider the latter four submissions (Dkt. Nos. 99, 100, 102, 103) in this Order. Having reviewed the Defendants' motion for summary judgment and the relevant record, the Court GRANTS the motion. Having reviewed Plaintiff's motions and the relevant record, the Court DENIES each of them.

I.     **BACKGROUND**

This is a civil rights complaint arising out of a motor vehicle accident and Plaintiff's subsequent arrest and prosecution for unlawfully leaving the scene of that accident. The incident giving rise to the claims before the Court occurred on the night of March 9, 2023, outside of a restaurant in Eastsound, Washington, and then unspooled over the following months as Plaintiff was investigated, arrested, and prosecuted. *See* Dkt. Nos. 92-1 (incident report), 92-2 (Weidner witness statement), 92-3 (Kruse witness statement), 92-4 (application for search warrant), 92-6 (search warrant), 92-8 (defendant's voluntary statement), 92-9 (criminal citation/mandatory court appearance), 92-11 (statement of defendant on plea of guilty), 92-12 (judgment and sentence).

**A.     The Parties**

Plaintiff is Janet Shellman Sherman, a resident of Deer Harbor, San Juan County, Washington. Dkt. No. 88 (Third Amended Complaint ("TAC")) at 1. Plaintiff is proceeding pro se. There are five Defendants: (1) Raymond Harvey, Detective with the San Juan County Sheriff's Office; (2) Eric Peter, Sheriff of San Juan County; (3) Honorable Kathryn C. Loring,

Judge of the San Juan County Superior Court; (4) Chris Taylor, San Juan County Deputy Prosecuting Attorney; and (5) John Doe. *Id.* at 1–2.

B.  **Factual Background**

    1.    **The Incident and Aftermath**[2]

At approximately 7:00 p.m. on March 9, 2023, Plaintiff went to the Island Pie restaurant in Eastsound, Washington. Dkt. No. 92-1 at 5. Between 7:00 p.m. and approximately 10:30 p.m., Plaintiff, a regular customer at the restaurant, consumed two or three beers. Dkt. No. 92-2 at 2. At approximately 10:30 p.m., Plaintiff was observed talking to another patron at the restaurant. *Id.* at 2–3. Margaret Weidner, an employee of Island Pie, observed that Plaintiff's "conversation was odd," and that "she somewhat had slurred speech." *Id.* at 3. Further, Plaintiff's "balance seemed off." *Id.* Weidner stated that she advised Plaintiff that "she shouldn't drive." *Id.* James Kruse, the owner of Island Pie, also observed that Plaintiff "appeared very tired and her speech slowed." Dkt. No. 92-3 at 2. Weidner advised Kruse that he would need to offer Plaintiff a ride home or, alternatively, call her a cab. Dkt. No. 92-2 at 3.

At this point, things escalated. Kruse averred that he offered to drive Plaintiff home. Kruse walked out of the restaurant with Plaintiff, "continuing the offer." Dkt. No. 92-3 at 2. Plaintiff, however, interpreted Kruse's offer and presence next to her vehicle as an "assault from behind" and believed that Kruse was "imped[ing] [her] from leaving." Dkt. No. 92-8 at 2. Plaintiff was seated in the driver's seat of her vehicle, with the front-driver's-side door open. *See* Dkt. No. 92-3 at 2; Dkt. No. 92-8 at 2–3. Kruse stood next to the car, on the driver's side, between the open door and the driver's seat. Plaintiff then "put [the car] in reverse and

---

[2] This narrative is drawn from the law enforcement records that Defendants submitted with their motion. Although Plaintiff, in prosecuting her case, has submitted hundreds of pages of photographs, computer screen shots, technical data, and other papers labeled as "exhibits," Plaintiff has not provided a cogent or coherent counternarrative to San Juan County's version of the story.

ORDER ON MOTION FOR SUMMARY JUDGMENT – 3

accelerated quickly with the drivers [*sic*] door open," striking Kruse with the door. Dkt. No. 92-1 at 5–6. After he was struck by the door, Kruse got out of the way and yelled at Plaintiff not to back up any further, but Plaintiff reversed again, "back[ing] her door against [an] adjacent vehicle." *Id.* Plaintiff then closed the door and drove away. *Id.* Kruse contacted law enforcement. *Id.*

Detective Raymond Harvey responded. Dkt. No. 92-1 at 5. Harvey ascertained Plaintiff's address and drove to Plaintiff's residence that night. *Id.* He could not access the property, however, and left, having determined that "obtaining and executing a search warrant on a home at that hour for a misdemeanor crime was not conducive to the crime." *Id.* Harvey visited the scene of the collision and identified the car that Plaintiff had struck. *Id.*

The next day, March 10, 2023, Harvey obtained witness reports from Kruse and Weidner. *Id.* at 6. He returned to Plaintiff's residence but was again unable to access the property. *Id.* That evening, at 6:02 p.m., Harvey emailed an application for a search warrant to the Honorable Kathryn C. Loring, a San Juan County Superior Court judge. Dkt. No. 92-5. Ten minutes later, at 6:12 p.m., Judge Loring issued the requested warrant. Dkt. No. 92-6. That evening, Harvey executed the warrant with San Juan County Deputy Herb Crowe. Dkt. No. 92-1 at 6. Harvey and Crowe accessed Plaintiff's property "by manipulating the lock mechanism [of the gate] without breaking it," but Plaintiff was not home. *Id.* Harvey and Crowe did not enter the residence and left. *Id.* Later that night, Plaintiff contacted Harvey by telephone, and she and Harvey made an appointment to meet at Plaintiff's residence the next day. *Id.*

On March 11, 2023, Harvey and Plaintiff met at Plaintiff's home, where Plaintiff provided Harvey with her version of what had happened at Island Pie. *Id.* Plaintiff explained to Harvey that "when she went to leave [the restaurant], this man had attacked her." *Id.* at 7. Plaintiff told Harvey that "she was verbally accosted by [Kruse] and [that] he had grabbed her

ORDER ON MOTION FOR SUMMARY JUDGMENT – 4

1  shoulder. [Plaintiff] felt like she was being attacked." *Id.* Plaintiff advised Harvey that her

2  actions that night had been informed by post-traumatic stress disorder associated with prior

3  instances of violence that she had endured as a victim. *Id.*

4     But according to Harvey, Plaintiff "admitted that she remembered hearing her car door

5  scraping along the truck next to her." *Id.* Plaintiff admitted further that "[s]he was guilty" of not

6  complying with the legal requirements associated with striking an unattended vehicle. *Id.* Harvey

7  asserted that Plaintiff "provided a written statement, after being advised by the Miranda

8  Warnings on the form." *Id.*; *see* Dkt. No. 92-8. Harvey also inspected Plaintiff's vehicle, which

9  he stated had sustained "damage consistent with the actions being described." Dkt. No. 92-1 at 7.

10    **2.     Legal Proceedings**

11    On March 15, 2023, Plaintiff was charged with reckless driving, in violation of RCW

12 46.61.500, and "hit and run unattended complicity," in violation of RCW 46.52.010. Dkt.

13 No. 92-9 at 2. Plaintiff was scheduled to appear in San Juan County District Court on March 22,

14 2023. *Id.* Plaintiff's case progressed through 2023. On January 29, 2024, Plaintiff pleaded guilty

15 to "hit and run unattended." Dkt. No. 92-11 at 2. In pleading guilty, Plaintiff acknowledged that

16 she was giving up her "right to appeal a finding of guilt after a trial." *Id.* at 4. In a statement,

17 Plaintiff "recognize[d] that [she] [was] considered guilty" and advised that "[t]he court may take

18 all [her] errors at face value . . . ." *Id.* at 9. Plaintiff was given a deferred sentence for 12 months,

19 with the condition that her case would be dismissed with prejudice, provided that she complete

20 alcohol drug information school ("ADIS") and a victim impact panel ("VIP"). Dkt. No. 92-12 at

21 2. On January 28, 2025, the District Court found that Plaintiff had complied with the terms of her

22

23

24

ORDER ON MOTION FOR SUMMARY JUDGMENT – 5

deferred sentence. Dkt. No. 90-1 at 1.[3] "[T]he finding of guilt [was] withdrawn and the cause [was] dismissed with prejudice." *Id.*

C.     **Procedural Background**

Plaintiff's submissions to the docket are prolific, and the docket contains multiple submissions that requested inappropriate relief, were procedurally deficient, or otherwise futile. *E.g.*, Dkt. No. 5 ("supplemental document"), Dkt. No. 22 ("motion subpoena"), Dkt. No. 29 ("claim evidence for defamation"). Throughout the prosecution of this case, the Court has addressed these extraneous submissions as they have been filed. *See, e.g.*, Dkt. No. 86 (denying six of Plaintiff's motions). Rather than recount each of Plaintiff's filings here, the Court will only discuss significant procedural events.

On March 28, 2024, Plaintiff filed a civil action in this Court against nine individuals, including Kruse, Weidner, Harvey, Crowe, and Peter, as well as two Doe defendants and the two owners of the building in which Island Pie is located. Dkt. No. 4 (Complaint) at 1–2. In a byzantine pleading, Plaintiff alleged that Defendants had committed, then conspired to cover up, various torts, crimes, and other misconduct. *See generally id.* She alleged that her criminal prosecution had been malicious, and that she was the victim of a host of civil rights violations. *See generally id.*

On August 8, 2024, the Court held a status conference with the Parties. Dkt. No. 54. The Court ordered Plaintiff to confer with Defendants to "come up with a timeframe" in which

---

[3] Docket No. 90 and its attachments represent Plaintiff's purported Fourth Amended Complaint ("FAC"). Because Plaintiff filed the FAC without having first obtained Defendants' consent or the Court's permission, however, the Court struck the pleading as unauthorized. *See* Dkt. No. 95 at 3–4; *see* Fed. R. Civ. P. 15(a). But attached to the FAC as the first page of Docket No. 90-1 is an Order of Dismissal from San Juan County District Court, which represents the ultimate disposition of Plaintiff's state criminal case. This court record is relevant to both Plaintiff's claims and Defendants' defenses. Dkt. No. 90-1 at 1. Therefore, the Court takes judicial notice of the state-court order. *See ScripsAmerica, Inc. v. Ironridge Global LLC*, 56 F. Supp. 3d 1121, 1136 (C.D. Cal. 2014) ("It is well established that federal courts may take judicial notice of related state court orders and proceedings.") (citing *Dawson v. Mahoney*, 451 F.3d 550, 551 (9th Cir. 2006)).

1  Plaintiff would file "a single complaint that include[d] all of her claims." Dkt. No. 55. On August
2  28, 2024, Plaintiff filed an amended complaint. Dkt. No. 58 (Second Amended Complaint
3  ("SAC")).[4] The SAC added Sheriff Peter and Judge Loring to the roster of Defendants, and
4  reduced the number of Doe defendants from two to one. *Id.* at 1. Like the original complaint, the
5  SAC alleged numerous torts, crimes, and other misconduct, as well as a substantial number of
6  "charges" that were not cognizable under federal law. *See generally id.* On September 17, 2024,
7  and September 19, 2024, the non-government Defendants filed motions to dismiss. Dkt. Nos. 70,
8  71, 73. On November 1, 2024, the Court granted Defendants' motions and dismissed the non-
9  government Defendants from the case, as well as all of the non–Section 1983 claims that
10 Plaintiff had brought against the government Defendants. Dkt. No. 85. The Court granted
11 Plaintiff "one final opportunity to amend her complaint." *Id.* at 12.

12      On December 3, 2024, Plaintiff filed a Third Amended Complaint ("TAC"). Dkt.
13 No. 88.[5] As of the date of this Order, the TAC is the operative pleading in this case. As discussed
14 above, the TAC names five Defendants, including John Doe. *Id.* at 1–2. In the TAC, Plaintiff
15 brings claims under 42 U.S.C. § 1983, alleging violations of her Fourth and Fourteenth
16 Amendment rights, as well as malicious prosecution, defamation, and perjury.[6] *See generally id.*

---

[4] Plaintiff filed several documents that were captioned as "complaints," none of which was a proper complaint under Federal Rule of Civil Procedure 8. *See* Dkt. Nos. 5, 6, 18 ("amended complaints" that were actually one-page excerpts of a pleading, provided without context or explanation). When Plaintiff filed an "Amended Amended Complaint" at Docket No. 58—what the Court and Parties would consider to be her then-operative pleading—it was referred to as a Second Amended Complaint. *See* Dkt. No. 85 at 1.

[5] Plaintiff filed two versions of the TAC, one day apart. Dkt. Nos. 87 (Dec. 2, 2024), 88 (Dec. 3, 2024). The Court notes, however, that the earlier version appeared to have been filed in error because: (1) it named Defendants and alleged claims that the Court had dismissed in its prior Order; and (2) Plaintiff filed a new document with the same title the next day. "[A]n amended complaint supersedes the original, the latter being treated thereafter as non-existent." *Ramirez v. County of San Bernardino*, 806 F.3d 1002, 1008 (9th Cir. 2015) (internal quotation mark and citation omitted). Accordingly, when Defendants filed their Answer, they directed their responsive pleading to the latter version of the TAC. *See* Dkt. No. 89 (Answer).

[6] Plaintiff purports to bring her perjury and defamation claims under 28 U.S.C. §§ 1746 and 4101, respectively.

1    Plaintiff also appears to allege violations of 42 U.S.C. §§ 1985 and 1986, although these

2    allegations comprise little more than textual citations to these statutes. *Id.* at 3. On February 11,

3    2025, Defendants answered the TAC. Dkt. No. 89. On April 22, 2025, Defendants filed the

4    instant motion for summary judgment. Dkt. No. 91. As discussed above, Plaintiff did not oppose

5    Defendants' motion for summary judgment and has instead sought leave to file a Fourth

6    Amended Complaint. *See* Dkt. Nos. 94, 99, 100, 102, 103.

## II.    LEGAL STANDARD

Under Federal Rule of Civil Procedure 56(b), "Unless a different time is set by local rule or the court orders otherwise, a party may file a motion for summary judgment at any time until 30 days after the close of all discovery." The Federal Rules of Civil Procedure "mandate[] the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (citing Fed. R. Civ. P. 56(c)). The inquiry at the summary judgment stage is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby*, 477 U.S. 242, 251–52 (1986).

The party moving for summary judgment must carry its burden of production by "either produc[ing] evidence negating an essential element of the nonmoving party's claim or defense or show[ing] that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial." *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Cos., Inc.*, 210 F.3d 1099, 1102 (9th Cir. 2000). This showing must be made through evidence in the record. Fed. R. Civ. P. 56(c) (explaining the ways in which a "party asserting that a fact cannot be or is genuinely disputed must support the assertion"). Unless the burden of production

is met, "the nonmoving party has no obligation to produce anything" to support its claims or defenses. *Nissan Fire*, 210 F.3d at 1103.

Courts do not make credibility determinations or weigh the evidence at this stage. *See Munden v. Stewart Title Guar. Co.*, 8 F.4th 1040, 1044 (9th Cir. 2021). They resolve factual issues in favor of a non-moving party, "only in the sense that, where the facts specially averred by that party contradict facts specifically averred by the movant, the motion must be denied." *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990). Conclusory, non-specific affidavits are insufficient, and "missing facts" are not to be presumed. *Id.* at 889. Further, uncorroborated and self-serving testimony does not create a genuine issue of fact. *See Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1061 (9th Cir. 2002).

### III.   DISCUSSION

Defendants assert that "Plaintiff is unable to maintain a cognizable claim against any of the . . . defendants here." Dkt. No. 91 at 6. The Court will examine the claims against each Defendant in turn.

**A.   John Doe**

Plaintiff includes "John Doe" in the caption of her TAC, but she does not actually make any allegations against this individual. *See* Dkt. No. 88 at 1. Moreover, despite his presence in the caption, John Doe is not listed among the "Parties to This Complaint" section of the pleading. *Id.* at 1–2. Therefore, "John Doe" is dismissed as a party, because Plaintiff has not stated any claim against them. *See, e.g.*, *Brown v. Maricopa County*, No. C24-2282, 2024 WL 4881525, at *3 (D. Ariz. Nov. 25, 2024) (dismissing Doe defendants against whom "Plaintiff ma[de] no allegations at all"); *Gardner v. Missoula Cnty. Detention Facility*, No. C19-150, 2020 WL 8474965, at *8–9 (D. Mont. Jan. 7, 2020) (same); *Dempsey v. Schwarzenegger*, No. C09-2921, 2010 WL 1445460, at *2–3 (N.D. Cal. Apr. 9, 2010) (same).

### B. Eric Peter

Defendants assert that Plaintiff "makes no specific allegations against [Defendant Peter] whatsoever." *Id.* Defendants point out that while Defendant Peter is identified as "Defendant No. 2" in the TAC, "his name does not otherwise appear anywhere in the complaint." *Id.* Consequently, the "complaint is not 'factually suggestive' of any claim against Sheriff Peter, and fails entirely to state any cognizable claim against him." *Id.* (quoting *Puget Soundkeeper All. v. Total Terminals Int'l, LLC*, 371 F. Supp. 3d 857, 862 (W.D. Wash. 2019)).

Construing the TAC liberally, it appears that Plaintiff is attempting to impute liability to Defendant Peter for the conduct of subordinate personnel of the San Juan County Sheriff's Office. *See* Dkt. No. 88 at 2 (identifying Defendant Peter as "Supervisor for all official personnel"). But "Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior*." *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009). "[V]icarious liability is inapplicable to *Bivens* and § 1983 suits, [so] a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Id.* Plaintiff has not done so here, and she has not proffered any evidence to suggest that Defendant Peter has violated her constitutional rights. Therefore, summary judgment is appropriate as to those claims against Defendant Peter.

### C. Honorable Kathryn C. Loring

Defendants assert that the claims against Judge Loring, a sitting judge, are barred by the doctrine of judicial immunity, and that Plaintiff's claims against her should be dismissed as a matter of law. *See* Dkt. No. 91 at 8. The Court agrees. "It is well settled that judges are generally immune from suit for money damages" for judicial acts. *Duvall v. County of Kitsap*, 260 F.3d 1124, 1133 (9th Cir. 2001) (citing *Mireles v. Waco*, 502 U.S. 9, 9–10 (1991)); *see also Meek v. City of Riverside*, 189 F.3d 962, 965 (9th Cir. 1999) ("It is well settled that Judges are generally

immune from civil liability under section 1983."). "[T]he doctrine of judicial immunity is thought to be in the best interests of 'the proper administration of justice . . . [, for it allows] a judicial officer, in exercising the authority vested in him [to] be free to act upon his own convictions, without apprehension of personal consequences to himself.'" *Stump v. Sparkman*, 435 U.S. 349, 363–64 (1978) (quoting *Bradley v. Fisher*, 80 U.S. (13 Wall.) 335, 347 (1871) (alterations in original)). "However, absolute judicial immunity does not apply to non-judicial acts, i.e. the administrative, legislative, and executive functions that judges may on occasion be assigned to perform." *Duvall*, 260 F.3d at 1133. Relevant here, "the issuance of a warrant is unquestionably a judicial act . . . ." *Burns v. Reed*, 500 U.S. 478, 492 (1991); *see Farson v. City of Lake Stevens*, No. C22-405, 2023 WL 1766374, at *6 n.7 (W.D. Wash. Feb. 3, 2023) (finding issuance of search warrant "judicial in nature" under RCW 2.20.030).

Here, Plaintiff's claims against Judge Loring are predicated on Judge Loring's issuance of a search warrant, which is a judicial act. *See, e.g.*, Dkt. No. 88 at 10 (alleging that "Judge Loring . . . Violated [Plaintiff's] 4th Amendment Rights with the invasive Search of Her Home"); *see also* Dkt. No. 92-6 (search warrant). Therefore, Judge Loring is entitled to absolute judicial immunity, and summary judgment is appropriate as to those claims against her.

**D.     Chris Taylor**

Defendants assert that the claims against Defendant Taylor, the prosecutor in Plaintiff's criminal matter, are foreclosed by the doctrine of "absolute prosecutorial immunity." Dkt. No. 91 at 8. "Prosecutors performing their official prosecutorial functions are entitled to absolute immunity from constitutional torts." *Lacey v. Maricopa County*, 693 F.3d 896, 912 (9th Cir. 2012). This immunity applies "even if the acts in question were committed in bad faith." *Patterson v. Van Arsdel*, 883 F.3d 826, 829–30 (9th Cir. 2018). "The Supreme Court has held that this rule follows for the same reason that prosecutors were given immunity at common

law—without it, resentful defendants would bring retaliatory lawsuits against their prosecutors, and because a prosecutor 'inevitably makes many decisions that could engender colorable claims of constitutional deprivation[, d]efending these decisions, often years after they were made, could impose unique and intolerable burdens upon a prosecutor.'" *Lacey*, 693 F.3d at 912 (quoting *Van de Kamp v. Goldstein*, 555 U.S. 335, 342 (2009)). "Without the promise of immunity from suit, a prosecutor would be distracted from his duties and timid in pursuing prosecutions rather than exercising the independent judgment and discretion that his office requires." *Id.* "Moreover, 'the judicial process is available as a check on prosecutorial actions,' and it reduces the need for private suits for damages to keep prosecutors in line." *Id.* (quoting *Burns*, 500 U.S. at 492).

Courts take a "functional approach" when determining whether a given action is protected: They "distinguish between acts of advocacy, which are entitled to absolute immunity, and administrative and 'police-type' investigative acts which are not." *Patterson*, 883 F.3d at 830. "To qualify as advocacy, an act must be 'intimately associated with the judicial phase of the criminal process.'" *Id.* (quoting *Imbler v. Pachtman*, 424 U.S. 409, 430 (1976)). Immunity does not apply, for example, "when the prosecutor gives advice to police during a criminal investigation [or] when the prosecutor makes statements to the press." *Van de Kamp*, 555 U.S. at 343 (first citing *Burns*, 500 U.S. at 496; then citing *Buckley v. Fitzsimmons*, 509 U.S. 259, 277 (1993)).

Here, Plaintiff's allegations against Defendant Taylor appear to concern Defendant Taylor's analysis of evidence (Dkt. No. 88 at 8) and his general prosecution of Plaintiff's case (*see id.*). Although Plaintiff's TAC is difficult to parse, it appears that Plaintiff believes that Defendant Taylor either: (1) did not obtain evidence that Plaintiff believed might be relevant; (2) did not turn over to Plaintiff potentially exculpatory evidence; (3) did not properly consider

evidence—or some combination of some or all of these actions. *See id.* The Court agrees with Defendants' characterization of Plaintiff's claims as "concern[ing] actions [Defendant Taylor] took in the course and scope of his role as a deputy prosecuting attorney, all of which were directly associated with the criminal charges against Plaintiff." Dkt. No. 91 at 9.

The Court expresses no opinion one way or the other as to the ultimate propriety of Defendant Taylor's prosecution of Plaintiff's criminal case. It is clear, however, that the complained-of conduct falls under the umbrella of Defendant Taylor's prosecutorial immunity and is therefore not actionable here. *See Morgan v. Cochise Cnty. Bd. of Supervisors*, 487 F. Supp. 3d 789, 798–99 (D. Ariz. 2020) (identifying certain actions that are subject to prosecutorial immunity). Therefore, summary judgment is appropriate as to those claims against Defendant Taylor.

**E.     Raymond Harvey**

Defendants assert two bases for summary judgment as to Plaintiff's various claims against Defendant Harvey. First, Plaintiff's Section 1983 claims against Defendant Harvey—i.e., those claims associated with Defendant Harvey's role in Plaintiff's arrest and prosecution—"are foreclosed by her conviction." Dkt. No. 91 at 10. Second, Plaintiff's claims of defamation and perjury are not "cognizable under federal law." *Id.* at 11. The Court will address these in turn.

**1.     Arrest- and Prosecution-Related Claims**

Plaintiff appears to allege that Defendant Harvey falsified evidence—in part to obtain to obtain a search warrant, and in part to "maliciously prosecute" Plaintiff. Dkt. No. 88 at 6. Plaintiff alleges further that, once the search warrant had been obtained, Defendant Harvey "violate[d]" it and illegally entered Plaintiff's residence. *Id.* Plaintiff also appears to allege a *Miranda* violation against Defendant Harvey (*id.* at 7), as well as Defendant Harvey's "orchestrat[ion]" and "coordinat[ion]" of other civil rights violations (*see id.* at 9). Defendants

summarize Plaintiff's claims as stemming from "the same core allegation[] that there was no probable cause for her arrest or prosecution, no evidence she committed any crime, and that her conviction was therefore wrongful." Dkt. No. 91 at 10.

Plaintiff's guilty plea (*see* Dkt. Nos. 92-11, 92-12) necessarily precludes her challenges here to her arrest and prosecution.

> [I]n order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254. A claim for damages bearing that relationship to a conviction or sentence that has not been so invalidated is not cognizable under § 1983.

*Heck v. Humphrey*, 512 U.S. 477, 486–87 (1994). Plaintiff's conviction here has not been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal, or called into question by a writ of habeas corpus.

It is of no consequence that, 12 months after Plaintiff pleaded guilty, "the finding of guilt [was] withdrawn and the cause [was] dismissed with prejudice" on the basis that Plaintiff "ha[d] complied with the terms of the Deferred Imposition of Sentence." Dkt. No. 90-1 at 1. Under Washington law, "a plea of guilty to a [traffic] offense is equivalent to a conviction for Title 46 ['Motor Vehicles'] purposes." *Jacks v. Nelson*, 13 Wn. App. 108, 110, 533 P.2d 452 (1975). RCW 46.20.270 states that "'conviction' means . . . a plea of guilty . . . , regardless of whether the imposition of sentence or sanctions are deferred or the penalty is suspended . . . ." RCW 46.20.270(3). Further, the Washington Supreme Court has "rejected the idea that successful completion of a deferred sentence resulting in the dismissal of a misdemeanor conviction erases the fact of conviction." *State v. Conaway*, 199 Wn.2d 742, 750, 512 P.3d 526 (2022). In

examining RCW 3.66.067, "the statute governing dismissals of misdemeanor convictions," the state supreme court emphasized that a court's authority to defer a sentence necessarily comes into play "*after a conviction.*" *Id.* (quoting RCW 3.66.067). This means that Plaintiff's claims here "necessarily implicate" the validity of her conviction, because she is essentially alleging that she should have never been arrested or prosecuted, and that her guilty plea is therefore suspect. *Gossett v. Gailfus*, No. C23-5850, 2023 WL 8369896, at *2 (W.D. Wash. Dec. 4, 2023). Importantly, Plaintiff never challenged the validity of her conviction in state court and, instead, allowed her deferred sentence to run its course. *See Klug v. Clark County*, No. C19-6031, 2021 WL 2404180, at *4 (W.D. Wash. Mar. 3, 2021), *report and recommendation adopted* 2021 WL 2071249 (May 24, 2021) (finding *Heck* barred Section 1983 claims arising from traffic ticket where "plaintiff could have sought invalidation of his traffic citation in state court and yet did not do so").

### 2. Other Claims

Defendants argue that Plaintiff's allegations of "defamation under 28 USC §4101 and perjury under 28 USC §1746" are not cognizable under federal law. Dkt. No. 91 at 11. The Court agrees. As the Court previously explained when it dismissed substantially similar allegations made by Plaintiff, 28 U.S.C. § 4101 ("Definitions [as applicable to foreign judgments]") "do[es] not provide for a private right of action." Dkt. No. 85 (order granting motions to dismiss) at 6. Likewise, 28 U.S.C. § 1746 ("Unsworn declarations under penalty of perjury") does not provide for a private right of action. Rather, that statute merely establishes how a declarant or affiant should attest to the veracity of a written statement. Therefore, Plaintiff's allegations of "Multiple counts **Defamation and Perjury 28 U.S.C 1746, 28 U.S.C. §4101** [*sic*]" cannot be sustained, and summary judgment is appropriate.

*   *   *

1     Plaintiff has failed to raise any genuine issue of material fact as to any of her claims.

2 Accordingly, the Court GRANTS summary judgment as to all claims.

3                             **IV.    OTHER PENDING MOTIONS**

4     There are four other motions pending on the docket, all of which appear to be motions in

5 which Plaintiff seeks leave to amend her complaint. *See* Dkt. Nos. 99, 100, 102, 103. Under

6 Local Civil Rule 15(a),

7             A party who moves for leave to amend a pleading must attach a
            copy of the proposed amended pleading as an exhibit to the
8             motion. The party must indicate on the proposed amended pleading
            how it differs from the pleading that it amends by bracketing or
9             striking through the text to be deleted and underlining or
            highlighting the text to be added.
10

11 Plaintiff has not attached a proposed amended pleading to any of her four submissions, and her

12 motions are thus deficient in that regard.

13     Moreover, upon granting Defendants' motions to dismiss on November 1, 2024, the

14 Court afforded Plaintiff "one final opportunity to amend her complaint." Dkt. No. 85 at 12. The

15 Court advised Plaintiff that, when filing her TAC, she "must include all claims she intends to

16 bring in this case; she will not be allowed to file any additional amended complaints without

17 good cause and without leave of the Court." *Id.* On December 3, 2024, Plaintiff filed a TAC,

18 which remains the operative pleading in this case. Dkt. No. 88. But then, despite the Court's

19 instruction to Plaintiff that she would not be permitted to file another amended complaint without

20 the Court's leave, on February 13, 2025, Plaintiff filed a Fourth Amended Complaint. Dkt.

21 No. 90. The Court struck this pleading as violative of its November 1, 2024, order. Dkt. No. 95.

22 On May 21, 2025; June 21, 2025; and twice on July 14, 2025, Plaintiff made further attempts to

23 seek leave to amend her complaint. Dkt. Nos. 99, 100, 102, 103.

24

Based on the language of the Court's November 1, 2024, Order and because the Court issued a scheduling order that set an August 30, 2024, deadline for filing amended pleadings (Dkt. No. 61 at 1), Plaintiff must show good cause to be permitted to file an amended complaint. *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 607–08 (9th Cir. 1992); *see* Fed. R. Civ. P. 16(b). That is, Plaintiff's "ability to amend [her] complaint [is] governed by Rule 16(b), not Rule 15(a)." *Johnson*, 975 F.2d at 608 (citing *Forstmann v. Culp*, 114 F.R.D. 83, 85 (M.D.N.C. 1987)). "Unlike Rule 15(a)'s liberal amendment policy which focuses on the bad faith of the party seeking to interpose an amendment and the prejudice to the opposing party, Rule 16(b)'s 'good cause' standard primarily considers the diligence of the party seeking the amendment." *Id.* at 609.

Plaintiff has not met that standard. Plaintiff asserts that she seeks to amend her complaint for two reasons. First, Plaintiff seeks "to bring forth" the dismissal of her criminal case, pursuant to her completion of her deferred sentence. Dkt. No. 103 at 3. Second, Plaintiff seeks to address Defendants' ongoing surveillance of her property. *Id.* at 4. Neither of these demonstrates good cause for allowing Plaintiff to amend her pleading. First, with respect to the dismissal of her criminal matter, as discussed above, the dismissal has no bearing on the issues in this case. *See supra* Section III.E.1. Second, the surveillance-related claims could have been included in the TAC. In her first motion for leave to amend the TAC, Plaintiff contemplates adding issues to her pleading that, at the latest, became known to her "after several weeks" of Defendant Harvey's March 10, 2023, execution of the search warrant. Dkt. No. 99 at 1. Plaintiff also seeks to amend her complaint to include allegations related to "[s]urveillance [that] began at the very start of her County Case . . . ." *Id.* at 2. Her "County Case," of course, began on or about March 9, 2023, when Harvey began investigating the Island Pie incident. "[T]hese Actions," Plaintiff alleges, "were wrongly initiated [], starting on 03/10/2023." Dkt. No. 100 at 2. And as of July 14, 2025,

1    Plaintiff alleges that she has been the subject of surveillance for "25/26 months." Dkt. No. 102 at

2    1. This is not newly discovered misconduct that Plaintiff could not have alleged in a prior,

3    timely, pleading.

4    Finally, Plaintiff's request to "have John Doe now changed to Government San Juan

5    County Director Tony Harrell" (Dkt. No. 103 at 4) is also unavailing, as the TAC does not allege

6    that John Doe actually did anything (*see generally* Dkt. No. 88). Identifying John Doe as a

7    specific individual does not make the pleading any less deficient. Plaintiff has had multiple

8    opportunities to allege specific wrongdoing against John Doe; she has not done so.

9    Therefore, having already provided Plaintiff with two opportunities to amend her

10   complaint, Plaintiff's motions for leave to amend her complaint are DENIED.

## V. CONCLUSION

Accordingly, Defendants' motion for summary judgment is GRANTED, with judgment to issue separately. It is hereby ORDERED:

(1) Plaintiff's Third Amended Complaint (Dkt. No. 88) is DISMISSED WITH PREJUDICE.

(2) Plaintiff's Motions for Leave to Amend (Dkt. Nos. 99, 100, 102, 103) are DENIED.

(3) The Clerk of Court is DIRECTED to close the case.

Dated this 22nd day of July 2025.

Tana Lin
United States District Judge